ELLIS, Judge.
This is a compensation suit in which the plaintiff while in the employ of the defendant suffered an injury to his foot which he alleged resulted in total and permanent disability so as to entitle him to $30 per week not to exceed 400 weeks.
The Lower Court rendered judgment in favor of the plaintiff and against the defendant in which compensation was awarded at the i‘ate of $30 per week from Oct. 24, 1950 until February 1, 1951 with legal interest on said payments from due date until paid and $220 for medical expenses, and $185 for the fees of the medical experts. From this judgment the plaintiff has appealed and asked that the judgment be ■ amended so as to award him compensation to September 21, 1951 rather than February 1, 1951, and defendant has answered the appeal in which he- asks the complete reversal of the judgment.
The facts reveal that the plaintiff was employed as a trucker in the defendant’s papeV mill at. Bogalusa, La., and a roll of paper-weighing approximately 1,800 pounds fell on his left heel and foot and he was immediately treated by a physician furnished. by the defendant, but at that time the diagnosis did not disclose that plaintiff had suffered a fracture to the fourth metatarsal of his left heel, and he was sent home with instructions to apply hot applications, and it was not until September 11, 1950 that X-rays were made and the fracture discovered and a cast placed on plaintiff’s foot. The cast was removed sometime between the 6th and 21st of October, 1950 by Dr. Morgan who testified that the plaintiff was able to return to work on October 24, 1950, however, when questioned as to whether the fracture healed properly he answered, “At the time I saw him last I considered it was healing properly!” (Emphasis added.) This testimony was not changed on cross or redirect examination, and according to the doctor, plaintiff’s fracture had not healed on October 21st, the date of plaintiff’s last visit, and the District Judge was correct in finding from this doctor’s testimony that the plaintiff was not able to return to work on October 24, 1950.
Dr. Blaise Salatich, an' orthopedic specialist, witness on behalf of the plaintiff, testified that he first saw and examined plaintiff on October 25, 1950 and the second time on December 12,. 1950. He definitely established the fracture • of the fourth metatarsal and found an enlargement of the left ankle, and was of the further opinion that due to the 1,800 pounds of paper which fell across the plaintiff’s heel that there was soft tissue damage, and he believed the plaintiff’s complaint of pain and swelling to be well founded. The second examination reaffirmed his previous findings. - After the second visit he recommended and gave the plaintiff therapy treatments consisting of deep penetrating short wave diathermy -over his left foot. These treatments were given 65 times and *681 a charge of $4 per treatment made therefor. At one point in this doctor’s testimony he testified that the treatments were given in his office at regular intervals from December 1950 to February 1951. In every other part of his testimony Which referred to the length of the treatments he stated that they continued to September 21, 1951, at which time he was of the opinion that the plaintiff could return to his former occupation. It was upon this one statement that the treatments continued until February 1951 together with the testimony of the plaintiff that he had gone to the doctor’s office five days a week from the time he started until the doctor finished treating him, and the fact that the plaintiff later changed his testimony and stated he went there two days a week and that the plaintiff’s compensation was' limited to February 1951. ' The learned Judge reasoned that it was difficult to understand how an intelligent witness like the doctor could make such a mistake and which he stated in his opinion was changed in answer to a leading ■ question by his counsel, and further that-if the plaintiff had gone to this doctor’s office five days a week from December 1950 to September 1951 that it would have resulted in almost three times as many visits, and the judge thought the plaintiff had changed his testimony in order to make it' fit in With the number of visits the doctor testified to. We believe that the District Court is in error in so strictly interpreting this doctor’s testimony on this point and in the deductions which he made with regard to the plaintiff’s testimony.
Dr. Salatich, when he testified to the February date was under re-direct exám-ination by counsel, and while still on redirect and after seven questions he was asked, “Did Brown continue his treatments after October 1951? A. The last treatment was 9/21/51.” “Q. And he took treatments constantly from. December 1950 to that date you mentioned, September 21, 1951? A. Yes, sir.” On the same page of the transcript he was asked the following questions and gave the following answers : .
' “Q. Can you tell whether or not. the treatments improved his' foot and ankle? A. Yes, I was of the opinion on September 21, 1951 this patient had made ■ sufficient recovery to warrant his dismissal as a patient.
“Q. Since September 21, 1951, he has never been -back to your office, is that correct?” ■
Shortly thereafter the doctor was examined by the' Court as follows:
“Q. In September 1951 you believed his condition was such as -to warrant his dismissal, your opinion was that he was then able to return to his former occupation? A. I was of the opinion he could make an attempt.
* * *
“Q. That was in September 1951? A. Yes, sir, the 21st.
“Counsel for plaintiff will be guided by his physician’s statement that he believed this man able to work ' afte'r ■ this suit was' filed and is willing to' amerid the pleadings accordingly:
. “Counsel fo.r plaintiff admits,. in line with the testimony .of Dr. Salatich, expert witness, .that his client, the plaintiff herein, was able to resume his, duties; on September 21, 1951, and therefore, his disability ceased- at that time
It is most significant that neither counsel for plaintiff or defendant nor the district judge were immediately aware that this doctor had placed the last treatment at February ’51 rather than September, 1951. The argument of counsel for plaintiff is very persuasive that there is quite a similarity in the Gregg shorthand system when hurriedly written between the .characters used to denote “February” and “September.” The testimony- on this point, shows that all parties including the Judge must have been of the opinion that the doctor had testified “September.” In addition to a consideration of the entire testimony 'on this point which we believe clearly-de *682 notes an error, it is also very significant that counsel for the defendant introduced and filed in evidence the bill of Dr. Salatich identified by him and marked for identification “Gaylord-1”. -This bill shows in part: “65 office visits including deep penetrating short wave diathermy treatments. 12/12/50 to 9/21/51 @ 4.00 $260.00”
Counsel for defendant in introducing this bill posed the following question:
“Q. I show you .a bill previously submitted to me by Mr. Lenfant and examined by you this morning, and ask you if that bill was prepared ’by you for Mr. Lenfant? A. Yes, sir.”
Most assuredly counsel for the defendant knew what was on this bill as it had been furnished by counsel for plaintiff previously, and had he understood the doctor to have testified that the treatments ceased in February 1951 he would have cross-examined him on this point. In so far as to the testimony of plaintiff as to the number of visits and the number of days that he went to be treated, we do not attach much importance in the variance, and neither do we attribute any change in his testimony from five visits per week to two visits -per week to be due to an ability on his part to make his testimony fit Dr. Salatich’s. We are of the opinion that Dr. Salatich’s testimony should be construed and accepted as showing that he gave the plaintiff 65 treatments from December 1950 to' September 21, 1951 and on that date he discharged the plaintiff as able to return to work.
The Judge of the District Court has correctly appraised the testimony of the other witnesses as follows:
“Dr. W. R. McGehee, who was appointed by the court on request of counsel for plaintiff and defendant, examined the plaintiff on the 27th day of December, 1951, which was of course, subsequent to the date that even the plaintiff’s doctor admits that he had recovered. However, in the course of his testimony this Doctor stated that a fracture of this type usually required from four to six months to heal to the extent that a person could return to their normal activities.
“The only lay witness who testified in this case as to the plaintiff’s injuries was his wife, and her testimony was to the effect that up until September 1951 he was unable to work and hobbled around on a cane and did odd jobs at a home where she was employed as a cook, for which both of them received their board and lodging and $50.00 per month.. From my appreciation of the medical testimony of the four doctors, the plaintiff and that of the plaintiff’s wife as. I have' attempted to heretofore analyze it, I am of the opinion that the plaintiff was not able ,to return to work on October 24th, 1950, for the reason that Dr. Morgan’s testimony shows without a doubt that the fracture had not completely healed at that time, and I do not believe any laborer with an un-healed fracture of his foot is able to carry on the normal activities of his occupation. Further than this, I do not feel that the plaintiff was able to return to work on December 15, 1950, which was the date of the examination by Dr. Schlesinger. I appreciate the fact that the Doctor found 'from his examination of the x-rays the. fracture had healed, but it must be remembered that a roll of paper weighing some 1800 lbs. crushed this plaintiff’s heel and there could certainly have been soft tissue injury, as well as enlargement of the ankle. It was admitted by Dr. Schlesinger there could have been soft tissue injury, and he further admitted subsequent to his examination there could have been swelling in the patient’s left ankle * * * ” .
It is ordered that the judgment of the district court be amended by awarding the plaintiff compensation through September 2Í, 1951 rather than February 1, 1951 and awarding to Dr. Salatich the full amount of his bill, viz., $310, and as thus amended that the judgment be affirmed at plaintiff’s cost.